IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of others similarly situated,<br>   Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY,<br>   Defendant. | Case No. 1:20-cv-07091<br><br>**JURY TRIAL DEMANDED**<br><br><br>Hon. Judge Joan B. Gottschall<br>Hon. Mag. Judge Sunil R. Harjani |

## SECOND AMENDED CLASS ACTION COMPLAINT

1. Plaintiff Robert Hossfeld ("Hossfeld" or "Plaintiff") has been on the National Do Not Call Registry for more than four years, and has repeatedly requested not to receive telemarketing calls regarding Allstate goods and services. Indeed, Hossfeld *sued* Allstate previously for failure to honor his prior do-not-call requests. *Hossfeld v. Allstate Ins. Co.*, No. 1:19-cv-03492 (N.D. Ill.).

2. Despite repeated requests not to receive calls and two prior federal lawsuits on the subject, Allstate and/or those on its behalf keep calling Hossfeld's cell phone to advertise and sell Allstate goods and services. Allstate telemarketing calls have continued even after this lawsuit was filed.

3. Some calls come in on a "spoofed" phone number that is not formally associated with any Allstate or agent thereof, often using a local area code. On some calls, when Plaintiff answers he hears a long pause, then a rote tone, and then the caller drops the call. These calls – including the dropped or "dead air" calls – were made for the purpose of trying to sell Allstate goods and services.

4. On information and belief, the caller (or Allstate itself) drops the line when it – the computer or a human being – "realizes" that Hossfeld is on Allstate's internal do-not-call list.

Upon information and belief, Allstate's "ALM" proprietary marketing lead management system caused the dropped calls. Alternatively, the line is dropped because the calls were made too quickly, such that an Allstate agent was not available to take the call.

5. Allstate knows that calls like these are happening, not least because of Hossfeld's earlier case that involved dead air calls, and because Plaintiff notified Allstate of other dead air calls, too. Allstate has not taken sufficient action to curb these calls. Moreover, Allstate knows that others are making calls on its behalf without specifying their name, address, and on whose behalf calls are being made, because that's what happened in Hossfeld's prior case, too.

6. "Dead air" telemarketing calls from unrecognizable caller IDs like those made to Plaintiff violate the TCPA's requirement that all telemarketing calls clearly identify the caller and the seller, and provide contact information. 47 C.F.R. § 64.1200(d)(4); 47 U.S.C. § 227(c)(5).

7. Moreover, the TCPA prohibits making any telemarketing call to a person who, like Hossfeld, has previously asked not to receive such calls, and makes sellers like Allstate liable for calls made on their behalf in violation of the TCPA's internal do-not-call rules.

8. Despite the above, Allstate continues to accept business derived from telemarketing, including calls made by the same people and agents as the ones Plaintiff has recently received.

## Parties

9. Plaintiff Robert Hossfeld is a natural person and a citizen of the State of Texas. At all relevant times, Plaintiff was the subscriber for the personal cellular telephone that received the calls at issue.

10.     Defendant Allstate Insurance Company is a Delaware corporation headquartered in Northbrook, Illinois, in this District. Allstate is a citizen of Illinois.

## Jurisdiction & Venue

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

12.     Additionally, the Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges nationwide classes, which will result in at least one class member residing in a state different from Defendant.

13.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Defendant Allstate is a resident of this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## TCPA Background

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "'telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

15.     Relevant here, the TCPA prohibits initiating any telemarketing call unless the person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. 47 C.F.R. § 64.1200(d).

This includes, inter alia, having a written policy, available upon demand, for maintaining a do-not-call list, training personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list, identifying the name of the caller during each call, the name of the person or entity on whose behalf the call was made, and associated phone or address information, and actually honoring do-not-call requests within a reasonable time from the date such request is made. *Id.*

16. Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls. *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers ... under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et. al for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶ 28 (2013).

17. Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories, including vicarious liability. Under those circumstances, including as described herein as to Allstate, the seller is properly deemed to have initiated the call through the person or entity that actually placed it.

## Facts

18. On November 11, 2020, at around 4:27 p.m., Hossfeld received a call on his cell phone from 281-724-2161. When he answered, the call played a beep and then hung up on him.

4

This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

19. Hossfeld called back, and an Allstate agent answered the phone. The Allstate agent told Plaintiff that the agent obtained the number from a "list."

20. Hossfeld called 281-724-2161 back again on November 12, 2020, to attempt to find out more information about the call. The Allstate agent who answered told Plaintiff that any calls to his number were a "glitch," but that they were happy to give him a quote for insurance. The agent conceded that her office had received multiple complaints about similar calls. Upon information and belief, the calls to Plaintiff's and other consumers' numbers was not truly a "glitch," but instead were the result of an infirmity with the sufficiency, implementation, or other aspect of Allstate's do-not-call policy.

21. On November 12, 2020, at around 9:28 a.m., Hossfeld received a missed call from 979-764-0015. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

22. Plaintiff called the 979-764-0015 number back, and spoke with an Allstate agent, who told Hossfeld that his office had received about 90 calls from irate consumers who had received similar calls, and that the calls must be originating from Allstate's Dallas office.

23. Plaintiff stated during this call that he had previously told Allstate to stop calling, and reiterated this to the agent.

24. On November 12, 2020, at 10:52 a.m., Plaintiff received a call from 512-292-7410. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

5

25. This call, too, played a beep, and then a live agent picked up who said the call was being made "on behalf of Allstate" to offer quotes for insurance.

26. On or around November 12, 2020, at about 3:19 p.m., Plaintiff received a missed call from 713-928-6218. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

27. On November 12, 2020, at 5:56 p.m., Plaintiff received a call from 254-719-2300, for the purpose of trying to sell him Allstate goods or services. The agent indicated that they would email Plaintiff a quote for insurance.

28. On November 13, 2020, at 10:35 a.m., Plaintiff received a call from 281-334-6255. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

29. This call was from an Allstate agency. Plaintiff engaged with the caller, who told him that they had their "marketing team" do the calling for them. After gathering some information from Plaintiff, the Allstate representative emailed him for purposes of providing a quote for Allstate insurance during the call. Plaintiff again asked not to be called.

30. On November 13, 2020, at about 11:22 a.m., Plaintiff received a call from 817-596-0033. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services. This was a follow up from a call the day before. The agent provided a callback number of 972-212-5448, which is not an Allstate number. Plaintiff requested not to be called, and the agent informed him that the call was being recorded.

31. On November 13, 2020, at about 11:56 a.m., Plaintiff received another call from 817-596-0033. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services. This time the caller acknowledged that Hossfeld was supposed to

6

have been on the internal Do Not Call list and should not have been called, and stated that Plaintiff's phone number had been removed from calling lists.

32. On the evening of November 20, 2021, Plaintiff received and answered a telephone call from 325-216-5148. There was nobody on the other end of the line, just "dead air." Upon information and belief, this call was call was made on Allstate's behalf, for the purpose of trying to sell Plaintiff Allstate goods and services.

33. On November 23, 2020, Plaintiff received another call from or on behalf of Allstate, from 214-765-9742, at about 1:44 p.m. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

34. The caller did not identify herself, her employer, or a phone number or address, and told Plaintiff she was looking for "Michael."

35. After Plaintiff answered some questions, the call was forwarded to a woman who said she was from "Allstate," and provided phone number 972-645-7090 – an unlisted number – as a call back. This person stated that it was a "marketer" who called, but refused to tell Plaintiff the name of the marketer. Plaintiff asked for an email where he could contact her, but she told him that she would not provide any email until Plaintiff provided his driver's license number.

36. When Plaintiff told the Allstate representative that he didn't want more calls and didn't understand why they continued to harass him after he asked them not to contact him, the agent said Allstate appreciates his time and thanks him for the opportunity to offer him Allstate goods and services, and then hung up on him.

37. On November 24, 2020, Plaintiff received another call from Allstate from 214-765-9742, at approximately 2:40 p.m. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

7

38. The caller said that her name was Jean, and acknowledged that she was the same person who called the prior day.

39. Plaintiff was then transferred to an Allstate representative, who provided her name as "Jayne" and provided callback number 469-778-5703. This was the same Allstate insurance agent with whom Plaintiff spoke previously, and who emailed Plaintiff on November 13, 2020.

40. Jayne acknowledged that her records showed that Plaintiff had previously asked not to be called, acknowledged that he had been quoted Allstate goods and services "several times before", and claimed that she did not do anything wrong because she did not place the call.

41. When confronted with illegal telemarketing, Allstate representatives and employees have said or implied similar things to Plaintiff and others before: "we did not make the call, so we cannot be held responsible, and cannot do anything to help you."

42. While this position might hold water after one or even two illegal calls, Allstate is now on notice of these violations, and is unwilling to take sufficient measures to stop them.

43. Indeed, on February 8, 2021—after this lawsuit was filed—Plaintiff received another call from 254-749-2314. This call was made on Allstate's behalf, for the purpose of trying to sell him Allstate goods and services.

44. Plaintiff answered, and a person on the other end with a thick foreign accent asked him a series of questions about his car and residence, and raced through a largely unintelligible script that appeared to be aimed at obtaining "prior express written consent" to transfer the call to Allstate, or possibly trying to obtain consent for the call that had already been made.

45. The call was then transferred to a person who said she was "Carol at Allstate", who provided her phone number as 469-604-0889. The person hung up on Plaintiff when he asked where she obtained his information. Upon information and belief, Carol hung up when she realized that he was on Allstate's internal do-not-call list.

46. Plaintiff has received more calls than the ones delineated here, but it is difficult to keep track of so many calls.

47. It is also difficult to determine from whom calls originated, or what was being sold, because in many cases the callers failed to identify who they were or what they were selling during the calls.

48. Indeed, multiple calls hung up on Plaintiff without saying anything, other than playing a beep. All or some of those calls were placed by or on behalf of Allstate for purposes of selling Allstate goods and services.

49. In retrospect, there isn't any question as to whether Allstate was behind most of the dead air calls, for example because upon callback or receipt of subsequent calls, Allstate representatives came onto the line. To the extent that there were Allstate agents involved, those agents are exclusive to Allstate. Plaintiff was solicited Allstate products and services arising from some of the calls, he was mailed correspondence as a result of some of these calls from Allstate, and Defendant pulled his credit reports in association with such calls, too.

50. Plaintiff did not provide prior express invitation or permission or consent for these calls. To the contrary, he has repeatedly asked not to receive calls by or on behalf of Allstate.

51. The TCPA's requirement that telemarketers (a) identify themselves, (b) identify the name of the person or entity on whose behalf the calls are being made, and (c) provide a telephone number or address at which the person or entity may be contacted is material.

52. Absent identifying information being provided in the beginning of calls, call recipients have little idea who is calling them, or why.

53. This is particularly true where the phone numbers are spoofed to appear to be neighbors or similar, in order to trick consumers like Plaintiff into answering calls they would not otherwise answer.

54. Telemarketers or marketing "lead generators" often intentionally refuse to say who they are, and delay identifying what specific products or services they're selling until further into the call or after it is transferred to the "closer" sales agent, because they want to avoid accountability.

55. Failure and/or refusal to identify oneself or those on whose behalf calls are made during a telemarketing call is a substantial and material violation of the recipient's privacy rights; particularly when the call results in "dead air." Aside from the intrusion upon seclusion that would happen if the callers complied with these requirements, Plaintiff was literally "left hanging" on the line, wondering what the purpose of the call was, and if anyone would ever come on.

56. Indeed, recipients of noncompliant anonymous and "dead air" calls like Plaintiff are left wondering and worrying: Was the call something important? Was his son in trouble, calling for help from a strange line? Was a doctor trying to get a hold of him to provide test results? Had Plaintiff been informed of the caller and materials being sold during these calls, as the regulations require, these would not be concerns.

57. Failure to properly identify oneself during a telemarketing call also allows companies like Allstate to avoid accountability for their own bad acts, and the bad acts of their vendors and agents.

10

58. Some or all of the calls that hung up on Plaintiff were the result of an automated process whereby Plaintiff's phone number was "scrubbed" against Allstate's internal do-not-call list *after* the call had already been connected.

59. Defendant's agents, or those otherwise making calls on its behalf, did not have written do-not-call policies or procedures at the time of the calls to Plaintiff and the classes defined below. Alternatively, whatever written policies existed either failed to comply with the minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued calls to Plaintiff after he directly asked not to be contacted (and after his prior federal lawsuit under the TCPA).

60. During all relevant times, Allstate maintained the power and right of interim control over its agents' and caller's actions with respect to the telemarketing complained of herein. Allstate's agents—including those with whom Plaintiff spoke as a result of the calling at issue—maintain exclusive written agent or agency agreements with Allstate, which grant Allstate control over, for example, the minutiae of how business is and may be generated on its behalf, the geographic scope of such, use of Allstate's tradename, and compliance and marketing practices, including with respect to telemarketing (and the use and form of such, such as approval of scripts, do-not-call practices, and use of artificial- or prerecorded-voice calls), TCPA compliance, use of vendors, and the extent to which such vendors must comply with Allstate's telemarketing-related practices, policies, and procedures.

61. Allstate's agreement with its authorized agents specifically directs that the agent will act as its "agent" for the purposes of soliciting, selling, and servicing Allstate insurance, and that the agent shall be required to demonstrate knowledge of applicable rules and regulations (including as to the TCPA) upon Allstate's request. Allstate also has the right to access its

agents' physical locations and records to review and ensure contractual and regulatory compliance.

62. Allstate maintains the right to terminate the agent, for any reason whatsoever, and it also maintains the sole right to alter the terms of its relationship with such parties at whim.

63. Allstate also gave its agents and their vendors, including those to whom Plaintiff spoke as a result of the calling at issue, access to its proprietary product and pricing information and approved the sale and quotation of its insurance products as a result of the calling at issue. The agents and their vendors that called Plaintiff and other class members did not have their own inventory and were not resellers of any kind; they acted directly for Allstate.

64. Plaintiff and other class members reasonably believed that the caller that called them had Allstate's authority for the calls at issue, based on Allstate's own actions—including through directly permitting the use of its tradenames during such calls, providing compensation for business derived from such calls, providing agents with proprietary pricing and product information for use to help sell its products and services during calls with prospective customers, and by retaining revenue and providing the administrative functions provided for as part of the plan the consumer purchased during such calling.

65. Allstate knew that its agents or their vendors were telemarketing on its behalf regardless of consumer do-not-call requests, and without having instituted proper procedures to stop calls to consumers who ask not to be contacted, yet it did nothing – or next to nothing – to prevent or stop the calling at issue. Rather, instead of repudiating the calls and business derived therefrom, Allstate continued to "pass the buck" by deflecting complaints like Plaintiff's and blaming its telemarketers for illegal calls, while at the same time continuing to knowingly enjoy

the benefits of the marketing, including issuing quotes to call recipients and obtaining money through plans being purchased as a result.

66. Allstate had been sued repeatedly for similar TCPA violations prior to the calls to Plaintiff here, including by Hossfeld himself, but Defendant continued to engage in the conduct complained of herein despite having been put on notice of the violations.

67. Allstate's actions and omissions with regard to the telemarketing complained of herein justify a reasonable assumption that it consented to the telemarketing at issue.

68. Allstate knowingly accepted benefits that originated through the nonconsensual telemarketing at issue. Allstate knowingly compensated its agents (and/or their telemarketing vendors) for such, Allstate accepted the advertising benefit in having its products and services solicited to Plaintiff and other class members, and it further benefitted by retaining money paid by call recipients for the plans purchased as a result of the illegal calling at issue on an ongoing basis, thereby ratifying such.

69. Alternatively, to the extent Defendant claims it lacked full knowledge about every aspect of the telemarketing-based lead generation performed on its behalf, it failed to investigate further despite knowledge that would have caused a reasonable person to do so.

70. Defendant has long known that consumers are suffering TCPA violations as a result of its improper telemarketing and lead generation practices. *See, e.g., Abante Rooter & Plumbing, Inc. v. Allstate Ins. Co.*, No. 1:15-cv-09025 (N.D. Ill. filed Oct. 13, 2015) (Allstate paid $10.5 million to settle TCPA class action); *Hossfeld v. Allstate Ins. Co.*, No. 1:19-cv-03492 (N.D. Ill. filed May 24, 2019); *Landy v. Allstate Ins. Co.*, No. 1:19-cv-06830 (N.D. Ill. filed Oct. 15, 2019) (putative TCPA class action).

71. Allstate, itself, has also long publicly acknowledged the exposure it and its partners face as a result of these calls, but has persisted in engaging in this unlawful telemarketing, anyway.

72. Allstate believes that it has no responsibility for telemarketing calls made by others on its behalf, to Plaintiff.

73. Allstate believes that it has no responsibility to American consumers for telemarketing calls made by others on its behalf.

74. Allstate has the power to stop its insurance agents from making or engaging others to make noncompliant telephone calls to Plaintiff and the classes, but refuses to do so.

75. Allstate has been active in lobbying and regulatory efforts aimed at attempting to relax the TCPA's requirements, and/or reduce or eliminate liability for TCPA violations. For example, in 2003 Allstate submitted comments urging the FCC not to adopt any Do Not Call Registry at all, and instead rely upon the company specific Do Not Call lists, which in its view were sufficient to "accomplish the objective of protecting consumers without unduly burdening the teleservices industry." Allstate continues to enjoy the benefits of illegal telemarketing in spite of the fact that the FCC has refused to adopt its requests and suggestions.

76. Defendant's violations were negligent. Alternatively, they were willful and knowing.

77. Plaintiff and the classes were damaged by the violations alleged herein. Their privacy was improperly invaded, the Allstate calls temporarily seized and trespassed upon the use of their phones, and they were forced to divert attention away from other activities to address the calls. The calls were annoying and a nuisance, and wasted the time of Plaintiff and the

14

classes. *See, e.g., Mims*, 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

### Class Action Allegations

78. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and the following classes:

> <u>ID Failure Class</u>. All persons in the United States (i) to whom more than one call was made within a twelve-month period for the purpose of encouraging the purchase of Allstate goods or services (including to find a marketing "lead" for Allstate goods or services), (ii) to a residential telephone number, (iii) where the caller did not inform the recipient that the call was made in order to try to sell Allstate goods or services, and (iv) such call was made at any time on or after a date four years prior to filing of this action.
>
>> Plaintiff alleges a subclass of calls that satisfy the above criteria, and where the call was disconnected by the caller before a live person came onto the caller's end of the line. (E.g. a dead air call).
>
> <u>IDNC Class</u>. All persons in the United States (i) to whom more than one call was made for the purpose of encouraging the purchase of Allstate goods or services (including to find a marketing "lead" for Allstate goods or services) in any 12-month period since the date four years prior to the filing of this action, (ii) to a residential telephone number, (iii) where the phone number was on Allstate's do-not-call list at the time of at least one such call.

79. Upon information and belief, including based on the volume of calls Plaintiff himself has received and the numerous other lawsuits Allstate has faced based on similar allegations of voluminous, illegal calling in violation of the TCPA, and Allstate's national presence, the residential telephone numbers of thousands of persons in each class and subclass were called in 2020.

80. Common questions of law or fact exist as to all members of each class, and predominate over any questions solely affecting any individual member, including Plaintiff. Such questions common to the classes include but are not limited to:

    a.    Whether Allstate established and implemented, with due care, reasonable practices and procedures to effectively prevent telemarketing in violation of the TCPA's do-not-call regulations;

    b.    Whether Allstate should be liable for any calls made by third parties; and

    c.    Damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and the other class members are entitled to enhanced damages under 47 U.S.C. § 227(c)(5).

81. Plaintiff's claims are typical of the claims of the other members of each class. The factual and legal bases of Defendant's liability to Plaintiff and the other members of each class are the same: Defendant violated the TCPA by causing the residential number of each ID Failure Class member to be contacted more than once where the caller did not inform the recipient that the call was made in order to try to sell Allstate goods or service (and, as to the subclass, in connection with a dead air call), and by causing the residential number of each IDNC Class member to be contacted more than once for telemarketing purposes despite the number's appearance on Allstate's internal do-not-call list.

82. Plaintiff will fairly and adequately protect the interests of the class members. Plaintiff has no interests that might conflict with the interests of the class members. Plaintiff is interested in pursuing these claims vigorously, and has retained counsel competent and experienced in class and complex litigation, including with regards to the claims alleged herein.

83. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual action

would entail. There are, on information and belief, thousands of members of each class and subclass, such that joinder of all members is impracticable.

84. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

85. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other class members, thereby making relief appropriate with respect to each class as a whole. Prosecution of separate actions by individual class members, should they even realize that their rights have been violated, would likely create the risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct.

86. The identity of each class and subclass is, on information and belief, readily identifiable from Defendant's and its agents' or vendors' records.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227
### (Internal Do-Not-Call Violations – Failure to Identify)

87. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this count on behalf of himself and the ID Failure Class and subclass.

88. The TCPA requires that on all telemarketing calls, the caller identify themselves, the name of the person on whose behalf the call is being made (i.e. the "seller"), and a telephone number or address at which the person seller can be contacted. 47 C.F.R. § 64.1200(d)(4).

89. The TCPA requires any party that is engaged in telemarketing institute and maintain a written internal do-not-call policy that includes this disclosure requirement. *Id.*

90. All of the calls made by or on behalf of Allstate to Plaintiff were made for telemarketing purposes, and many of the Allstate calls Plaintiff received did not comply with these identification requirements.

91. Defendant violated the TCPA by not having sufficient internal DNC policies, by not following or honoring the policies that it did have, and/or by not sufficiently ensuring that those making calls on its behalf did the same.

92. Plaintiff and the class members each received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

93. As a result of these violations, Plaintiff and the class and subclass were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy.

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the ID Failure Class and subclass, respectfully requests that the Court enter judgment against Defendant for:

A. Certification of the class and subclass as alleged herein;

B. A declaration that Defendant violated the TCPA as to Plaintiff and the class and subclass;

C. An injunction to prevent further violations;

D. Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E. Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F. Such other or further relief as the Court deems just and proper.

**COUNT II**
**Violations of the TCPA, 47 U.S.C. § 227**
**(Internal Do-Not-Call Violations – Calls After Demands to Stop)**

94.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein. Plaintiff brings this count on behalf of himself and the IDNC Class.

95.     The TCPA requires any party that is engaged in telemarketing institute and maintain a written internal do-not-call policy. 47 C.F.R. § 64.1200(d).

96.     Defendant violated the TCPA by not having sufficient internal DNC policies, by not following or honoring any policies that it did have, and/or by not sufficiently ensuring that those making calls on its behalf did the same—including by failing to actually honor do-not-call requests made by Plaintiff and other members of the IDNC Class.

97.     Plaintiff and the class members received more than one call in violation of these rules within a twelve-month period, and a cause of action under 47 U.S.C. § 227(c)(5) has therefore accrued.

98.     As a result of these violations, Plaintiff and the class were damaged by Defendant's violations, in that they received non-privileged and unsolicited telemarketing calls that invaded their privacy.

WHEREFORE, Plaintiff Robert Hossfeld, individually and on behalf of the IDNC Class, respectfully requests that the Court enter judgment against Defendant for:

A.     Certification of the class as alleged herein;

B.     A declaration that Defendant violated the TCPA as to Plaintiff and the class;

C.     An injunction to prevent further violations;

D.     Damages pursuant to 47 U.S.C. § 227(c)(5), as applicable;

E.     Costs, expenses, and attorneys' fees, to the extent permitted by law; and

F.  Such other or further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Respectfully submitted,

Dated: March 26, 2021

ROBERT HOSSFELD, individually and on behalf of others similarly situated

By: */s/ Alexander H. Burke*

Alexander H. Burke
Email: aburke@burkelawllc.com
Daniel J. Marovitch
Email: dmarovitch@burkelawllc.com
BURKE LAW OFFICES, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288

*Counsel for Plaintiff*


## Document Preservation Demand and Do Not Call Request

Plaintiff hereby demands that Defendant take affirmative steps to preserve all recordings, data, databases, call records, evidence relating to consent or prior express invitation or permission for calls, e-mails, recordings, documents, and all other tangible things that relate to the allegations herein, Plaintiff, or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale, or file associated with Plaintiff or the putative class members, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim. If the Defendant is aware of any agent, vendor, subvendor or other third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant or counsel obtain and preserve all such materials, and identify such so that Plaintiff may take appropriate steps to ensure preservation of the materials, too. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

Plaintiff also again requests that Defendant stop calling his telephone number, 254-743-8888, and his minor son's number that Plaintiff maintains 254-681-9507.

*/s/ Alexander H. Burke*

20