IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of a class of all persons and entities similarly situated,<br>    Plaintiff,<br><br>   v.<br><br>ALLSTATE INSURANCE COMPANY,<br>    Defendant. | Case No. 1:20-cv-07091<br><br>Hon. Judge Joan B. Gottschall<br>Hon. Mag. Judge Sunil R. Harjani |

**OPPOSED
PLAINTIFF'S MOTION TO COMPEL ESI**

This class action seeks redress for telemarketing calls made on behalf of Allstate to consumers who had previously asked not to be called, and for improper caller identification, in violation of the Telephone Consumer Protection Act's internal do-not-call rules. Dkt. 40, 2d Am. Compl. ["SAC"] ¶¶ 87-98; 47 C.F.R. § 64.1200(d).

At the hearing on September 9, 2021, the Court ordered Allstate to begin production of ESI for its and Plaintiff's proposed search terms and two agreed custodians. If the parties couldn't reach agreement as Plaintiff's proposed custodians, Allstate was to move for a protective order by September 23, 2021. Exhibit A, Tr. at 7-12; Dkt. 78.

Allstate did not file a motion for protective order, nor did it respond to Plaintiff's requests to confer about the matter.

Instead, Allstate took narrowed search terms – which Plaintiff offered as one element of a "package" proposal that included both search term and custodian compromises by both sides – and applied them to Allstate's custodians, only. Exhibit B, Burke Decl. ¶ 7. Allstate has refused to confer further. *Id.*

Allstate's production is not what the Court ordered, and is not what the parties agreed to.

And Allstate's two proposed custodians are not Allstate employees at all; they are insurance agents – persons Allstate claims are independent contractors – only. Apart from applicable agents, additional custodians Plaintiff has requested are the person in charge of Allstate's internal Do Not Call policies, Valerie Lim and her boss Brian Bloom, plus the two Allstate employees who spoke with the telemarketer at issue before some of the calls at issue, Mary Beth Warner and Alan Wroblewski.

Plaintiff thus respectfully asks that the Court compel Allstate to apply the search terms and custodians he proposes hereto as Exhibit C, as further detailed below.

I. **BACKGROUND**

The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). To that end, the TCPA's internal do-not-call regulations provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d).

Such procedures must meet certain minimum standards including, as relevant here: (1) that the caller properly identify themselves and the seller, and provide valid contact information during the call, and (2) that the caller and seller appropriately track and honor consumer do-not-call requests. 47 C.F.R. § 64.1200(d)(3)-(4). "If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request." 47 C.F.R. § 64.1200(3).

Plaintiff filed this action on December 1, 2020, to obtain redress against Defendant Allstate Insurance Company ("Allstate") for telemarketing calls he and others received in violation of the TCPA's internal do-not-call rules, including both due to continued calls after requests to stop, and calls that failed to provide proper identification and contact information. The parties entered into a stipulated ESI protocol on May 13, 2021, which required Allstate to use keyword-based searches of custodian records to produce relevant and discoverable material. Dkt. 56 §§ VIII, XII. In July 2021, Allstate proposed 2 non-employee custodians and 38 search terms, and Plaintiff proposed 5 additional custodians and 9 additional search terms.

During the discovery hearing on September 9, 2021, Allstate represented to the Court that the parties were in agreement as to search terms and the two custodians Allstate proposed, but that they were not in agreement as to Plaintiff's additional proposed custodians. Exhibit A, Tr. p. 7-9. Plaintiff *disputed* that the parties were in agreement about either search terms or custodians, and indicated that Plaintiff wanted to work to make the terms more manageable. Exhibit A, Tr. p. 9-10. Ultimately, the Court ordered Allstate to "start producing ESI now with the custodians that [the parties have] agreed upon with the search terms that [Allstate has] come up with and what plaintiff has added to[.]" Exhibit A, Tr. p. 11. The Court further ordered that, if the parties couldn't resolve their dispute over Plaintiff's proposed custodians, Allstate was to file a motion for protective order by September 23, 2021. Exhibit A, Tr. p. 12.

Plaintiff's counsel attempted to confer with Allstate about the ESI issues subject to the Court's order and, based on a hit report Allstate provided, offered to greatly reduce the number of search terms as a compromise for including his additional custodians. Exhibit B, Burke Decl. ¶ 7. When Allstate suggested that it would accept Plaintiff's limited set of search terms, but still proceed only with its two non-employee custodians, Plaintiff made clear that his proposal was

contingent on keeping his proposed custodians. *Id.* Allstate did not respond to Plaintiff's email, it did not file a motion for protective by the Court's deadline, and instead, it made an ESI production on September 23, 2021. *Id.* During a following meet-and-confer call on September 30, 2021, Allstate's counsel informed Plaintiff's attorneys that Allstate's ESI production was just for its two proposed, non-employee custodians, only, despite not having moved for a protective order as to the other custodians like the Court ordered. *Id.* When Plaintiff's counsel tried to confer further, defense counsel refused to discuss it, and abruptly hung up the phone while counsel was mid-sentence. *Id.*

If Allstate didn't agree to Plaintiff's proposed custodians, then it was required to have filed for a protective order. Because Allstate did not do so, and instead proceeded with an ESI production that wasn't what the parties agreed to (and with limited search terms Plaintiff's counsel proposed for purposes of a compromise to use *his* proposed custodians),[1] while refusing to substantively confer about these issues, Plaintiff now asks the Court to require Allstate to use the search terms and custodians he proposes here.

**II.     LEGAL STANDARD**

"Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The scope of discovery is broad— parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the

---

[1]     *See* Dkt. 86 p. 2 (Allstate's status report noting that its ESI production "was run using a narrowed list of search terms drafted by Plaintiff's counsel and run against Allstate's original proposed custodians, Jason Fleming and Daniel Gilmond," while neglecting to inform the Court that Plaintiff only "drafted" these search terms within the context of a proposed compromise that was not performed).

4

issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). As such, "[t]he Federal Rules of Civil Procedure ... strongly favor full discovery whenever possible." *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).

### III.   ARGUMENT

The Court should compel Allstate to use Plaintiff's proposed search terms and custodians because they were proposed in good faith, and are appropriately tailored to the facts and claims of this action.

####   A.   Plaintiff's search terms are narrowly tailored to these proceedings.

Because defense counsel hung up the phone when Plaintiff tried to meet and confer, Plaintiff did not know what search terms Allstate applied to its ESI production until Allstate filed its status report on October 1, 2021, Dkt. 86. We now know that Allstate applied the limited list of search terms Plaintiff offered as a compromise *if Allstate included his custodians—* unilaterally bringing the number of search terms down from 46 to 14. Exhibit B, Burke Decl. ¶ 7.

Plaintiff still sees benefit in using a smaller, more refined list. Thus, Plaintiff respectfully asks that the Court order Allstate to use the search terms he proposes herein, which consist of the smaller set he proposed to Allstate as a compromise after the last Court hearing, plus two additional terms that Allstate itself previously proposed: "TCPA" and "scrub*". Plaintiff's terms can generally be separated into two categories: (1) claim-related terms, and (2) relevant people and entities. Because Plaintiff's proposed search terms are appropriately limited to the scope of this case's facts and legal issues, they should be compelled.

### 1. Claim-Related Terms.

The Federal Rules define the proper scope of discovery to include "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). Plaintiff's claims here allege that Allstate is liable for telemarketing calls made on its behalf in violation of the TCPA's internal do-not-call rules. Specifically, Plaintiff alleges that Allstate and its vendors failed to appropriately track and honor do-not-call requests as required under 47 C.F.R. § 64.1200(d)(3). Dkt. 40, SAC ¶¶ 94-98. Plaintiff also alleges that Allstate or its vendors failed to properly identify themselves as required under 47 C.F.R. § 64.1200(d)(4), including by using "spoofed" caller IDs that masked the true identity of the caller and prevented recipients like Plaintiff from calling back to speak with them or Allstate. Dkt. 40, SAC ¶¶ 87-93.

To obtain relevant information on these caller identification and internal do-not-call violation claims, Plaintiff proposes the following search terms, <u>each of which</u> Allstate either previously proposed or already applied to its two proposed custodians:

(1) "<u>DNC /5 internal</u>",[2] "<u>company-specific</u>", and "<u>company specific</u>" – Plaintiff asserts claims based on violations of the TCPA's internal do-not-call rules, which requires proving that telemarketing for Allstate occurred to persons who asked not to be called, without proper procedures in place. *See* Dkt. 40, SAC ¶¶ 94-98; 47 C.F.R. § 64.1200(d). This necessarily requires delving into Allstate's policies, practices, and procedures, Allstate's handling of similar do-not-call complaints and investigations, and similar documents reflecting Allstate's compliance (or non-compliance) with the TCPA's internal do-not-call rules. In the context of the

---

[2] Plaintiff's proposed use of "DNC /5 internal" is actually *narrower* than the standalone "DNC" search term Allstate's counsel previously proposed back on July 20, 2021.

TCPA, do-not-call is commonly abbreviated as "DNC." Likewise, the TCPA's internal DNC rules are often referred to as "company-specific" DNC rules. Thus, these search terms are appropriately meant to capture Allstate's internal do-not-call documents that are inherently relevant to Plaintiff's claims in this case, and should be compelled.

(2) spoof* and "block* /5 'call* ID'" – Plaintiff's complaint also alleges that the dead air or spoofed-number[3] calls Plaintiff and other class members received for Allstate violated the TCPA's requirement that telemarketing calls include proper identification of the caller and seller, with a working contact number. *See* Dkt. 40, SAC ¶¶ 3, 53, 87-93; 47 C.F.R. § 64.1200(d)(4). Consequently, these two search terms—which seek documents relating to spoofing or blocked caller IDs—are directly on point, and they should be compelled.

(3) "external /3 vendor*" and TCPA[4] – This is a TCPA class action based on calls made by third parties on Allstate's behalf. Consequently, these search terms are intended to identify documents regarding Allstate's TCPA policies, practices, and procedures and it and its agents' use of third-party telemarketing vendors. Responsive materials are also likely to be relevant to Allstate's knowledge of the TCPA with respect to third-party vendor telemarketing, which is germane to whether treble damages are appropriate for "knowing" or "willful" violations under 47 U.S.C. § 227(c)(5).

(4) scrub* - Allstate's practices violate the TCPA's internal do-not-call rules because,

---

[3] "The term 'spoofing' refers to the practice in which callers use a device to block caller IDs from displaying the caller's correct name and/or phone number." *TelTech Sys., Inc. v. Barbour*, 866 F. Supp. 2d 571, 573 (S.D. Miss. 2011); *see also* https://www.fcc.gov/spoofing.

[4] The search terms "TCPA" and "scrub*" were not in Plaintiff's limited list he offered defense counsel as a compromise after the Court's last hearing, but they *were* in the proposal Allstate's counsel previously circulated back on January 20, 2021. Plaintiff wants them included as search terms here because they are clearly on point in this TCPA case, which is based on TCPA violations resulting from Allstate's and its (sub)vendors' failure to properly track and honor do-not-call requests by actually scrubbing call lists in the first place.

among other things, Allstate fails to ensure that the phone numbers to which its sub-vendors telemarket are properly run against Allstate's internal do-not-call list (i.e., "scrubbed") before a call is initiated, in order to prevent calls to people who previously asked not to be contacted. In fact, Allstate maintains a do-not-solicit "scrubbing" tool for this purpose; it just won't let its sub-vendors have access to it. Dkt. 68-2, Lim Dep. at 46. This search term is thus specifically meant to capture Allstate's documents concerning scrubbing, including how it works, Allstate's documents about it, and the extent to which it is utilized on telemarketing calls like those at issue here. Given the relevance of this search term, and the fact that Allstate previously agreed to it, it should be compelled.

Because these proposed search terms are reasonably targeted at documents relevant to Plaintiff's claims under the TCPA, they should be compelled.

### 2. Relevant Individuals and Entities.

Plaintiff's second category of proposed search terms targets relevant people and entities. These terms include:

(1) "Hossfeld" and "Michael Johnson", which are aimed at obtaining documents relating to Plaintiff and a pseudonym,

(2) "Michael Bradley", which is the name on the purported opt-in lead data Allstate's subvendor Transfer Kings produced as the basis for its calls to Plaintiff,

(3) "Transfer Kings", "TK", and "Basit", which are intended to obtain documents about Allstate's telemarketing subvendor Transfer Kings that called Plaintiff, as well as its owner, Ahmed Basit,

(4) "PolicyGenius" and "KP Leads", which are intended to obtain documents on the two lead generators associated with the opt-in lead data Transfer Kings provided as the

basis for its calls to Plaintiff.

Each of these terms is specific to Plaintiff or a particular entity or person who was directly implicated in the telemarketing-based lead generation Plaintiff sued about, and is thus appropriately targeted at obtaining relevant information. Consequently, these search terms should, likewise, be compelled.

**B.     The Court should order Allstate to use Plaintiff's proposed custodians because they are the people most likely to have relevant information.**

During the parties meet-and-confer call on September 30, 2021, defense counsel indicated that Allstate's ESI production only used two custodians: Jason Fleming and Daniel Gilmond, the owners of two Allstate agencies that hired the Transfer Kings telemarketer that called Plaintiff. Allstate's recent status report also indicates that it agrees to add Alfonso Perez, Jason Fleming's employee who directly provided a quote for Allstate insurance to Plaintiff Hossfeld during one of the calls, as a custodian, as well. Dkt. 86 p. 2.

However, limiting Allstate's ESI production to just three non-employee agents will not shed light on Allstate's corporate knowledge and involvement in the telemarketing at issue, as well as its policies, practices, and procedures on a systemic, class-wide basis. Consequently, Plaintiff proposes the following additional custodians:

- <u>Justin Powell and Richard Guerra</u>. These two individuals are not custodians the parties originally discussed; however, Plaintiff believes that the ongoing nature of the calling at issue makes their inclusion as custodians necessary: Although Plaintiff filed suit in December 2020, he continues to receive unwanted Allstate telemarketing calls. Just two weeks ago, on September 22, 2021, Plaintiff received an unsolicited Allstate telemarketing call from (281) 997-5757, which connected with Richard Guerra of the Justin Powell Allstate agency out of Antonio, Texas, who provided Plaintiff with a quote for auto insurance through Allstate's website. As

9

individuals who either directly solicited Plaintiff during one of the calls at issue or who have a direct relationship with the telemarketer who called him, Messrs. Guerra and Powell necessarily have relevant information pertaining to this case. Plaintiff thus asks that these individuals be included as custodians.

- <u>Mary Beth Warner</u>. Ms. Warner is an Allstate contact compliance representative. She directly corresponded with Transfer Kings owner, Ahmed Basit, regarding the calls at issue in this case, and served as a contact between Allstate corporate and its non-employee agents (also third parties) associated with the calls to Plaintiff and others. These communications between Ms. Warner and Transfer Kings occurred *before* Hossfeld received an additional telemarketing call through Transfer Kings. As an Allstate contact compliance representative, Ms. Warner also has information pertaining to Allstate's do-not-call policies and practices, as well as Charter's response to third-party complaints about similar TCPA violations, relevant to the merits and extent to which treble damages are appropriate for willful violations under 47 U.S.C. § 227(c)(5).

Warner is a highly relevant custodian of relevant evidence.

- <u>Alan Wroblewski</u>. Mr. Wroblewski is an Allstate contact compliance representative whose work involves Allstate's adherence to the TCPA do-not-call rules. Like Mary Beth Warner, Mr. Wroblewski directly engaged with Allstate's non-employee agent Jason Fleming concerning the telemarketing Plaintiff Hossfeld received. Because he has direct knowledge about Allstate's practices and procedures, as well as its compliance or non-compliance with the TCPA's do-not-call requirements and the specific facts of this case, he should be included as a custodian.

- <u>Valerie Lim</u>. Ms. Lim is a member of Allstate's contact compliance team. Allstate presented her in this action as its Rule 30(b)(6) deponent concerning the nature and use of its do-

not-solicit scrubbing tool and data. Dkt. 68-2. Because Ms. Lim has already been shown to have relevant information pertaining to Plaintiff's do-not-call claims in this action, she should be included as a custodian.

- <u>Brian Bloom</u>. Valerie Lim identified Mr. Bloom during her deposition in this case as her boss at Allstate, who serves as its director of administration and governance. Consequently, Mr. Bloom is expected to have evidence pertaining to Allstate's do-not-call compliance and policies, practices, and procedures relevant to this action.

In short, Allstate's attempt to limit its production to two or three non-employees will not result in a fair and adequate production of relevant evidence. Because Plaintiff's proposed custodians are appropriately targeted to the facts and claims at issue in this case, the Court should compel Allstate to apply them.

### C. **The Court Should Extend the Discovery Deadlines.**

The Court previously required the parties to notice all depositions by August 16, 2021, and set the fact discovery cut-off for November 1, 2021. Dkt. 67. Given the ongoing discovery issues in this case, the fact that Plaintiff just received another unsolicited Allstate telemarketing call involving a *different* Allstate agency just last month that needs to be investigated, and the fact that Allstate has yet to even begin a search for responsive ESI beyond two custodians (after which Plaintiff will need sufficient time to conduct remaining depositions), Plaintiff submits that good cause exists to extent these deadlines. Plaintiff believes that a three-month extension should afford sufficient time, and respectfully requests that the Court grant such relief.

### IV. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully asks that the Court: (1) order Allstate to produce ESI using Plaintiff's proposed search terms and custodians, (2) extend the deadline to

notice depositions to November 16, 2021, and the close of fact discovery to February 1, 2022, and (3) grant such other and further relief the Court deems reasonable and just, including any sanctions the Court believes to be appropriate under Fed.R.Civ.P. 37.

Dated: October 5, 2021

Respectfully submitted,

ROBERT HOSSFELD, individually and on behalf of others similarly situated

By: /s/ Alexander H. Burke

Alexander H. Burke
Daniel J. Marovitch
BURKE LAW OFFICES, LLC
909 Davis St., Suite 500
Evanston, IL 60201
Telephone: (312) 729-5288
aburke@burkelawllc.com
dmarovitch@burkelawllc.com

*Counsel for Plaintiff*

### FED. R. CIV. P. 37(A)(1)/L.R. 37.2 STATEMENT

The undersigned certifies that Plaintiff, through counsel, has attempted in good faith to confer with Defendant in an effort to obtain the discovery requested herein without court action, but that such attempts were unsuccessful, including through multiple meet-and-confer calls between myself and co-counsel Daniel J. Marovitch, and Defendant's counsel Rodney L. Lewis, including most recently on September 30, 2021, and through email. *See generally* Exhibit B, Burke Decl.

/s/ Alexander H. Burke

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2021, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                  */s/ Alexander H. Burke*