UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT HOSSFELD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>        Defendant. | Case No. 20-CV-7091<br><br>Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINOIN AND ORDER

This putative class action alleges violations of the Telephone Consumer Protection Act ("TCPA") (specifically, 47 U.S.C. § 227(c)(5)) based on Defendant Allstate Insurance Company or entities on its behalf placing unsolicited telephone calls to individuals on its internal do not call list ("DNC list"). Plaintiff Robert Hossfeld moves to compel Allstate to produce its internal DNC list. For the reasons stated below, the motion is granted subject to the limitations set forth herein.

## BACKGROUND

Hossfeld alleges that between November 11, 2020 and November 24, 2020, he received at least 11 telephone calls to his cellular phone from Allstate or on behalf of Allstate to advertise and sell Allstate goods and services. Second Amended Cmplt. ("SAC") at ¶¶ 18-40, 46. Hossfeld claims that he also received a call on Allstate's behalf on February 8, 2021, after this lawsuit was filed. *Id*. at ¶¶ 43-45. Hossfeld alleges that he did not provide prior express invitation, permission, or consent for these calls. *Id*. at ¶ 50. Hossfeld's SAC alleges two types of violations of the TCPA internal do-not-call rule, 47 C.F.R. § 64.1200(d), against Allstate: (1) failure to properly identify

the caller (Count I) and (2) failure to maintain or institute sufficient policies to prevent calls to consumers after demands to stop (Count II). Counts I and II are brought as class actions. The proposed classes include:

> **a. Failure to Identify Class:** All persons in the United States (i) to whom more than one call was made within a twelve-month period for the purpose of encouraging the purchase of Allstate goods or services (including to find a marketing "lead" for Allstate goods or services), (ii) to a residential telephone number, (iii) where the caller did not inform the recipient that the call was made in order to try to sell Allstate goods or services, and (iv) such call was made at any time on or after a date four years prior to filing of this action.
>
> Plaintiff alleges a subclass of calls that satisfy the above criteria, and where the call was disconnected by the caller before a live person came onto the caller's end of the line. (*e.g.*, a dead air call).
>
> **b. Internal DNC Class:** All persons in the United States (i) to whom more than one call was made for the purpose of encouraging the purchase of Allstate goods or services (including to find a marketing "lead" for Allstate goods or services) in any twelve-month period since the date four years prior to the filing of this action, (ii) to a residential telephone number, (iii) where the phone number was on Allstate's do-not-call list at the time of at least one such call.

*Id*. at ¶ 78.

Allstate asserts a number of affirmative defenses, including that it did not make the calls to Hossfeld and did not have sufficient control over the third-parties who made the calls to establish vicarious liability, its policies and practices with respect to telemarketing have been in compliance with the TCPA, and Hossfeld and/or members of the putative class consented to receive the telephone calls alleged in the SAC. Doc. 44 at 31-34; *see* 47 U.S.C. § 227(c)(5) ("It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."). The parties are currently engaged in fact discovery, and Hossfeld has not yet move for class certification.

**DISCUSSION**

Hossfeld's discovery requests to Allstate included Document Request No. 9, which seeks production of Allstate's "internal Do Not Call list, and all data associated therewith (*e.g.*, dates numbers were added, by whom, etc.)." Hossfeld's motion to compel is limited to only Allstate's internal DNC list. Allstate objects that its internal DNC list is not relevant to Hossfeld's claims and Hossfeld's request is premature and therefore not proportional to the needs of the case at this time. Allstate also suggests that production of the internal DNC list should be denied because of privacy concerns. Allstate's objections are unavailing and thus overruled.

Under Federal Rule of Civil Procedure 26(b)(1), a party may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "[P]recertification discovery is appropriate concerning Rule 23's threshold requirements of numerosity, common questions/commonality, and adequacy of representation." *Gebka v. Allstate Corp.*, 2021 WL 825612, at *8 (N.D. Ill. March 4, 2021). Moreover, "the scope of discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification. *Id*. Finally, magistrate judges "enjoy extremely broad discretion in controlling discovery." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013).

Allstate asserts that its internal do not call list is not relevant to Hossfeld's "individual" claims for three reasons: (1) Allstate does not contest that Hossfeld was on its internal DNC list; (2) during at least one of the calls at issue, Hossfeld consented to being transferred to an Allstate agent despite his number being registered on Allstate's internal DNC call list; and (3) the owner of the telemarketing vendor that made the calls at issue testified that he did not coordinate internal DNC lists with Allstate.

3

Hossfeld responds that Allstate's internal DNC list is relevant to numerosity, standing and class membership, and to determine whether Allstate coordinates internal DNC lists with vendors that telemarket on its behalf. Hossfeld explains that he intends to compare Allstate's internal DNC list with call records produced by Allstate and third-party vendors in this litigation to show that many of the calls were made to phone numbers that were on Allstate's internal DNC. Hossfeld says this information is necessary to his anticipated motion for class certification to show that: (1) the number of class members satisfies the numerosity requirement and (2) the class members have standing because their injury is traceable to Allstate's challenged actions. For standing purposes, Hossfeld argues that determining which calls were made to phone numbers on Allstate's internal DNC list may be relevant to establishing whether putative class members of the internal DNC class meet the "fairly traceable" requirement for Article III standing. Hossfeld relies on a case from the Eleventh Circuit in which the appellate court held that putative class members who did not ask DIRECTV to stop calling them lacked Article III standing to sue. *Cordoba v. DirecTV, LLC*, 942 F.3d 1259, 1271-72, 1276 (11th Cir. 2019) (holding "that recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list."). While Hossfeld does not necessarily agree with the *Cordoba* court's holding, he argues that he is entitled to discover which calls were made to phone numbers that were on Allstate's internal DNC list in order to demonstrate putative class members' standing should the district court follow this precedent.

Lastly, Hossfeld explains that Transfer Kings has produced its internal DNC list in this case. It is the Court's understanding that Transfer Kings' vendor Atlantic Telemarketing made the calls at issue in this case. Hossfeld states that he plans to compare Allstate's internal DNC list to

Transfer Kings' internal DNC list (and the internal DNC list of Atlantic Telemarketing) to show that the lists are materially different from Alllstate's internal DNC lists.  Presumably, this material difference will allow Hossfeld to argue that Allstate and its vendors do not coordinate.  In support, he cites *United States v. Dish Network LLC*, 954 F.3d 970, 975 (7th Cir. 2020), which held that under the Federal Trade Commission's Telemarketing Sales Rule, 16 C.F.R. § 310.4(b)(1)(iii), defendant DISH and its agents were required to "act collectively" by "ensur[ing] that it and all of its agents shared a single internal do-not-call list," "otherwise any household could receive endless calls peddling DISH's service, as long as each came from a different [agent]."  As such, Hossfeld believes that it is relevant to compare the internal DNC lists of Allstate, Transfer Kings, and Transfer Kings' vendor Atlantic Telemarketing to show that Allstate's written DNC policy is insufficient in preventing telephone solicitations in violation of the regulations.

      As an initial matter, Allstate's argument that Hossfeld should not be permitted to obtain information relevant to his class claims at this time is without merit.  Merit and class fact discovery are not bifurcated in this case and thus, there is only one fact stage of discovery, which closes on December 30, 2021.  Given that the Court has not bifurcated merits and class discovery, the fact that the internal DNC list is relevant to the class certification inquiry or even to a later standing determination of which class members have suffered a redressable injury does not make it disproportional to the needs of the case or otherwise improper at this time.  As a result, the Court overrules Allstate's argument that discovery of the internal DNC list is premature and that production of the requested list must wait until after a class certification motion is pending. *Gebka*, 2021 WL 825612, at *8 (discovery of information regarding persons who were potential class members which was relevant to numerosity, commonality, and typicality was not premature "because there [was] no order bifurcating class discovery in [the] case.").

5

The Court next finds that Allstate's internal DNC list is relevant in three ways to Hossfeld's claims in this case. *First*, the internal DNC list is clearly relevant to the numerosity element of the class certification analysis because it will allow Hossfeld to determine how many calls were made to unique phone numbers that were on Allstate's internal DNC list during the class period and thus, determine the number of potential class members. *See Gebka*, 2021 WL 825612, at *7 ("Courts in TCPA cases have repeatedly held that outbound call lists which contain the names and telephone numbers of plaintiffs and putative class members called by defendant or by others on defendant's behalf are relevant to numerosity, commonality, and typicality and are therefore discoverable."); *Second*, the internal DNC list is relevant as it may be necessary to establish Article III standing and class membership.[1]

*Third*, the internal DNC list is relevant to Hossfeld's claim that Allstate's procedures for coordinating internal DNC lists among Allstate and its vendors and subvendors are inadequate. Allstate takes the position that its internal do not call list is not necessary to determine whether the vendor which made the calls at issue and Allstate coordinated internal DNC lists because the owner of that entity gave "clear and unequivocal" deposition testimony that he unilaterally decided not to access, review, or coordinate any DNC lists. Doc. 79 at 3, 5. Thus, according to Allstate, discovery of its internal DNC list is impermissible because "deposition testimony and other

---

[1] While "[e]very class member must have Article III standing in order to recover individual damages," the Supreme Court recently declined to decide "the distinct question whether every class member must demonstrate standing *before* a court certifies a class." *TransUnion LLC v. Ramirez*, 141 S.Ct 2190, 2208 and n.4 (2021); *see also Cordoba*, 942 F.3d at 1272-77. "A plaintiff need not prove that every member of the proposed class has Article III standing prior to certification," but the standing inquiry plays a part in the Rule 23(b)(3) predominance inquiry of the class certification analysis and "at some time in the course of the litigation the district court will have to determine whether each of the absent class members has standing before they [can] be granted any relief." *Id*. at 1274, 1277; *see also Kohen v. Pacific Inv. Management Co. LLC*, 571 F.3d 672, 676, 677 (7th Cir. 2009) (accepting that standing is satisfied "as long as one member of a certified class has a plausible claim to have suffered damages" but stating that "a class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.").

documentary evidence has established that the entity making the calls at issue was not an Allstate contracted vendor and had no nexus to Allstate." *Id*. at 3. Allstate's argument effectively asks the Court to prohibit discovery based on its asserted, but yet unproven, third affirmative defense that it is not vicariously liable for the calls made by third-party entities alleged to have violated the TCPA.[2] Allstate's position is not well taken, as its assertion of an unproven theory does not negate Hossfeld's right to discover relevant information. Hossfeld has alleged an agency relationship between Allstate and the entity or entities making the alleged noncompliant calls at issue. SAC ¶¶ 16-17, 60-74. A defendant "may be liable for [TCPA] violations by its representatives under a broad range of agency principle, under the federal common law of agency, including not only formal agency, but also principles of apparent authority and ratification." *Bilek v. Federal Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) (*quoting Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6584 (2013)). The internal DNC list given by Allstate to its vendors and their compliance therewith is relevant to Hossfeld's claims that Allstate's procedures for coordinating internal DNC lists among Allstate and its vendors and subvendors are inadequate under the TCPA and its implementing regulations, 47 C.F.R. § 64.1200(d)(1), and Hossfeld is entitled to purse discovery on this theory.[3] *See* SAC, ¶¶ 95, 96. Because Allstate's defense to vicarious liability under the TCPA has not been decided on the merits, it does not justify denying Hossfeld's request for its internal DNC list. For all these reasons, the Court overrules Allstate's relevancy objection.[4]

---

[2] The Court expresses no view on whether lack of sufficient control to establish vicarious liability is properly characterized as an affirmative defense.

[3] Section 64.1200(d) lists "minimum standards" for internal DNC list procedures, including having a written policy, adequate training, and honoring requests not to receive further telemarketing calls. 47 C.F.R. § 64.1200(d)(1)-(3); doc. 37.

[4] The Court acknowledges Allstate's argument that Hossfeld's conduct in calling "back and engaging the telemarketing vendors who called him," "pretending to be other people and providing otherwise false information to the telemarketing vendors in order to continue the call long enough to be transferred to an

Allstate's second objection to producing its internal DNC list is based on privacy concerns because the list contains identifying information regarding persons who are potential class members. However, Allstate has failed to articulate how these privacy interests outweigh Hossfeld's need for disclosure of relevant information. Because the identity of potential class members is "relevant to Rule 23 issues and is needed for the class certification proceedings" as well as standing considerations and compliance with 47 C.F.R. § 64.1200(d), the Court rejects Allstate's suggestion that its internal DNC list should not be produced because it would violate the privacy interests of potential class members. *See Gebka*, 2021 WL 825612, at *8-9 (in a TCPA case, overruling Allstate's privacy objection to producing relevant confirmation emails and spreadsheets containing identifying information regarding persons who are potential class members).

Allstate's cited cases are distinguishable and do not support a denial of the motion to compel on privacy grounds. Allstate first relies on *Swelnis v. Universal Fidelity LP*, 2014 WL 1571323, at 8 3 (N.D. Ind. Apr. 17, 2014), for the proposition that "even at the class certification stage, numerous courts have denied a purported class representative's attempt to obtain lists that would disclose the identity and contact information of potential class members." Doc. 79 at 5. The *Swelnis* court recognized that class size is relevant under Rule 23 but denied the plaintiff's discovery requests seeking the exact size of the putative class as well as the names and addresses of potential class members to establish the numerosity of the putative class. *Swelnis*, 2014 WL

---

independent agent," and on at least one call, "consent[ing] to be transferred to an Allstate agent after being informed his number was on the Allstate DNC list," could result in a conclusion that Hossfeld is not an adequate class representative. Doc. 79 at 5 n.1. The Court also acknowledges Allstate's argument that Hossfeld will be unable to establish the typicality, commonality, and predominance requirements under Rule 23. *Id*. The Court's decision that Allstate should produce its internal DNC list does not mean that the Court has formed any opinion on the propriety of class certification. Those arguments will ultimately be addressed by the district judge, who will decide the issue of class certification.

1571323, at *3. Because the defendants in *Swelnis* had given plaintiff an estimated class size, the accuracy of which she did not challenge, and the names and addresses of putative class members "did not bear on the size of the class but with who is in it," the court concluded that granting the plaintiff's request for the exact putative class size would "needlessly burden Defendants." *Id*. Here, in contrast, Allstate does not claim that Hossfeld has sufficient information to estimate the number of putative class members for class certification purposes. Nor has it stipulated that the numerosity requirement is satisfied in this case. Moreover, Hossfeld has established that the Allstate's internal DNC list is relevant for purposes other than merely verifying the number of putative class members for numerosity, *i.e.*, evaluating Article III standing of unnamed class members and the extent of coordination of internal DNC lists between Allstate and third-party vendors.

Allstate also highlights the *Swelnis* court's reliance on the Supreme Court's opinion in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 354 (1978), to support its finding that it is generally inappropriate to order production of the names and addresses of all potential class members. The plaintiffs in *Oppenheimer* sought to compel the defendants to help compile a list of class members' names and addresses so that individual notice required by Rule 23(c)(2) could be sent. *Id*. at 342. The Supreme Court held that Rule 23(d), which governs the conduct of class actions, rather than the discovery rules, is the appropriate source of authority for such an order. *Id*. at 350. On this issue, the "critical point" was that "the information [was] sought to facilitate the sending of notice rather than to define or clarify issues in the case." *Id*. at 350. The plaintiff "argued to the District Court that he desired this information to enable him to send the class notice, and not for any other purpose." *Id*. at 352. Viewed in this context, the Supreme Court held that Rule 23, which deals comprehensively with class actions, was "the natural place to look for

authority for orders regulating the sending of notice." *Id*. at 354. The Court did "not think the discovery rules are the right tool for [the] job" of discovering information in order to send the class notice. *Id*.

This action is readily distinguishable from *Oppenheimer* because Hossfeld is seeking Allstate's internal DNC list "to define or clarify issues in the case" rather than only for the purpose of sending notice to class members. *Oppenheimer*, 437 U.S. at 350. The *Oppenheimer* Court expressly noted: "[w]e do not hold that class members' names and addresses never can be obtained under the discovery rules." *Id*. at 354 n. 20. "There may be in instances where this information could be relevant to issues that arise under Rule 23" such as numerosity, common questions, and adequacy of representation or "where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues." *Id*.[5] In this case, as explained above, Hossfeld has articulated how discovery of Allstate's internal DNC list is relevant for purposes other than providing notice to class members. Hossfeld will use the internal DNC list to determine the number of putative class members, confirm Article III standing, and evaluate the extent of coordination between Allstate and vendors to demonstrate that Allstate failed to implement adequate internal DNC policies and procedures under 47 C.F.R. § 64.1200(d). Because Hossfeld has articulated a need for the internal DNC list which contains putative class

---

[5] While the Supreme Court "doubted whether any of these purposes would require compilation of the names and addresses of all members of large class," Allstate has failed to stipulate that the numerosity requirement is met for purposes of class certification. Nor has it shown how a smaller subset of its internal DNC list would be sufficient to establish standing for each putative class member as well as the extent of coordination regarding internal DNC lists between Allstate and the entity or entities making the calls at issue. *Oppenheimer*, 437 U.S. 354 n.20.

members' identities to determine issues related to numerosity, standing, and adequacy of internal DNC practices and procedures, this information is relevant to his claims under Rule 26(b).[6]

*Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Ca. 2014), is also no help to Allstate's assertion that production of its internal DNC list should be denied due to privacy concerns. In *Gusman*, the magistrate judge held Comcast's outbound dial list of calls made to consumers was relevant to the class certification requirements of numerosity and commonality. However, the court denied the plaintiff's request for the list because production would impose an undue burden in light of other less intrusive and burdensome means of obtaining information that could be used to satisfy the numerosity and commonality prerequisites. *Id*. at 596-98. The *Gusman* court also concluded that the request for the outbound dial list was overbroad and unreasonably burdensome given the uncertain nature of the scope of the plaintiff's proposed class. *Id*. at 597. While Comcast objected to production of documentary evidence of prior express consent in part because disclosure of its subscriber's consent documentation raised privacy concerns, nowhere in the decision did the court address Comcast's privacy concerns. *Id*. at 598. The court denied the plaintiff's request for

---

[6] Allstate cites two additional cases but does not explain their applicability to this case. Doc. 79 at 6. In *Johnson v. Bankers Life & Cas. Co.*, 2013 WL 5442374 (W.D. Wis. Sept. 30, 2013), the district court ordered production of a sampling of the requested names and contact information because "plaintiff articulated a basis for requiring production of a subset of customer contact information" to assist "in showing commonality and typicality as required for class certification." *Id*. at *2. In contrast, no sampling alternative like the kind ordered in *Johnson* has been proposed in this case; nor has a showing been made that a representative sample could provide Hossfeld with the evidence needed to establish numerosity or standing or to evaluate the coordination of internal DNC lists among Allstate and third-party vendors. In *Sjoblom v. Charter Communications, LLC*, 2008 WL 4276928 (W.D. Wis. Jan. 4, 2008), a Fair Labor Standards Act collective action cited by Allstate, the district court granted plaintiff's motion to compel the defendant to "identify and produce documents related to putative federal class members" and rejected the defendant's argument that information and documents related to prospective plaintiffs was not relevant at the pre-certification stage. *Id*. at *1-2. The court held that the "identity of defendant's employees and employment practices related to those employees [was] reasonably likely to yield support for plaintiff's class allegations." *Id*. at *2. Likewise, the Court rejects Allstate's argument that Hossfeld's request for its internal DNC list which contains the identity of potential class members is premature pending a motion for class certification. Again, production of the internal DNC list is appropriate at this pre-certification stage because there is no bifurcation of class and merits discovery in this case.

express consent documentation related to the putative class and beyond the documentation Comcast had provided for the plaintiff's phone number as premature in light of plaintiff's failure to clearly define the putative class. *Id*. at 599. The magistrate judge reasoned that "[b]ecause the class definition appears to be a moving target, it is inappropriate to require Comcast to provide additional express consent documentation until after Plaintiff has clearly defined his class definition in his formally filed class certification motion." *Id*. None of the reasons the *Gusman* court gave for denying production of the outbound dial list and express consent documentation related to the putative class apply here: (1) Allstate has not offered an alternative means for Hossfeld to obtain information relevant to satisfying the numerosity or Article III standing requirements or evaluating the extent of coordination between Allstate and vendors regarding internal DNC lists; (2) Allstate does not argue that production of its internal DNC list would be unduly burdensome; (3) Allstate offered no specifics or evidence describing the time and costs that would be required to produce its internal DNC list; and (4) there is no uncertainty about the class definitions in this case. Most importantly, the *Gusman* court did not deny the plaintiff's request for express consent documentation related to the putative class based on privacy concerns.

Finally, the Court notes that Hossfeld did not respond directly to Allstate's privacy argument. At the pre-certification stage, some courts have noted "concern that plaintiffs' attorneys may be seeking such [putative class members' contact] information to identify potential new clients, rather than to establish the appropriateness of certification." *Dziennik v. Sealift, Inc.*, 2006 WL 1455464, at *1 (E.D. N.Y. May 23, 2006); *Hazlitt v. Apple Inc.*, 2021 WL 2457987, at *3 (S.D. Ill. June 16, 2021) ("while Plaintiffs do not explicitly state any intention to use the information in any other manner [than to support their anticipated class certification motion], their request 'necessarily implicate[s] concerns regarding potential client recruitment.'"); *Duffy v.*

12

*Illinois Tool Works, Inc.*, 2018 WL 1335357, at *6 (E.D. N.Y. March 15, 2018); *Swelnis*, 2014 WL 1571323 at *2 (restricting pre-certification production of putative class members' contact information "prevents lawyers from turning discovery into 'a tool to identify potential new clients.'"). While there is no indication in the record that Hossfeld's counsel intends to use the internal DNC list in this manner, the Court believes the most prudent course at this stage in the case is to grant Hossfeld's motion to compel Allstate's internal DNC list with the following limitations to protect the privacy interests of the potential class members and to address any concerns related to contacting putative class members: (1) Allstate's internal DNC list will be treated as confidential under the parties' Agreed Confidentiality Order (doc. 51) and (2) Hossfeld and his counsel are prohibited from: (a) contacting any person appearing on Allstate's internal DNC list unless and until a class is certified and (b) from using Allstate's internal DNC list for any purpose in the event that a class is not certified. *See Gebka*, 2021 WL 825612, at *9.

To the extent Hossfeld or his counsel have any relevant reason for communicating with putative class members prior to certification, he may file an appropriate motion. At that time, the Court will balance the "important competing concerns" and make a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the right of the parties." *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 759 (7th Cir. 2000) (*quoting Gulf Oil Co.v v. Bernard*, 452 U.S. 89, 101 (1981) (holding "plaintiffs have a right to contact members of the putative class" and "any discovery limitations should be carefully drawn.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel [68] Allstate's internal DNC list is granted with the limitations set forth above. By October 25, 2021, Allstate is ordered to produce its internal do not call list.

**SO ORDERED.**

Dated: October 15, 2021

_____
Sunil R. Harjani
United States Magistrate Judge